UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Lorenzo Deshon Stephens,** | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | **Civil Action No. 13-0323 (CKK)** |
| | : | |
| **Department of Justice,** | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, challenges the Federal Bureau of Investigation's release of records in April 2012 in response to his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendant has moved for summary judgment, Def.'s Mot. for Summ. J. [Dkt. #12], plaintiff has filed an opposition, Mem. of P. &A. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. # 20], and defendant has replied, Def.'s Reply in Further Support of its Mot. for Summ. J. [Dkt. # 26]. In addition, the Court has considered plaintiff's surreply, Pl.'s Response to Def.'s Reply in Further Support of its Mot. for Summ. J. [Dkt. # 29], and defendant's Response to Plaintiff's Surreply [Dkt. # 31]. Upon consideration of the parties' submissions and the entire record, the Court will grant defendant's motion and enter judgment accordingly.

## BACKGROUND

Plaintiff is serving a prison sentence of 327 months imposed by the United States District Court for the Eastern District of Virginia following his conviction for conspiracy to possess with intent to distribute and to distribute cocaine base. *U.S. v. Stephens*, 257 Fed. Appx. 611, 612 (4th Cir. 2007). In June 2011, plaintiff made a sweeping FOIA request to the FBI for all investigatory reports and records the FBI had compiled about him. Decl. of David M. Hardy

1

("Hardy Decl.") [Dkt. # 12-1], Ex. A. In addition, plaintiff requested all information "compiled by the FBI, DEA, and RAVE safe street task Force relating to the area of Richmond, Virginia known as the BYB, brickYard Boys or BrickYardBlock in the Gilpin Court area," and all records pertaining to "deals, promises, considerations, or inducements made to" seven named "witnesses. . . in exchange for the testimony and/or cooperation." *Id*. In January 2012, plaintiff submitted what was treated as a "supplemental" FOIA request, Hardy Decl. ¶ 11, seeking the same investigatory records but also specific information pertaining to the investigation of his association with "the local street gang known as 'the Brick yard boys' or 'Brick yard block' ", and "all proffers from all witnesses involving the alleged brick yard gang," including "ple[a] agreements, statements of facts, any cooperative agreements with the F.B.I. office" and the like. *Id*., Ex. D.

On April 16, 2012, the FBI informed plaintiff that it had located an investigatory file concerning plaintiff and several other subjects, processed 511 responsive pages pertaining to plaintiff, and referred a total of 17 pages to the Drug Enforcement Administration ("DEA"), and that it was releasing 363 pages either in whole or in part. *Id*. ¶ 16; Ex. I. The FBI withheld certain responsive material located at the Richmond Field Office in full because of an ongoing murder investigation, and advised plaintiff of his right to appeal the decision to the Office of Information Policy ("OIP"). *See* Ex. I. On July 23, 2012, the FBI released the 17 pages referred to DEA with information redacted. Ex. P.

In total, the FBI processed 518 pages and released 381 pages in whole or in part. Among the 137 pages withheld completely were seven duplicate pages. Hardy Decl. ¶ 4. The FBI withheld information under FOIA exemptions 3, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), *see* 5 U.S.C. § 552(b), and under subsection (j)(2) of the Privacy Act, 5 U.S.C. § 552a. *See* Hardy Decl. ¶¶

43, 104 & Exs. I, P. OIP affirmed the FBI's determinations on September 6, 2012, Ex. Q, and plaintiff initiated this action on March 12, 2013.

## LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FOIA authorizes the court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, the elements of a FOIA claim are (1) improperly (2) withheld (3) agency records. "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). The disclosure requirement generally covers only those records that are in the agency's custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). An inadequate search for records may constitute an improper

withholding under the FOIA. *See Maydak v. U.S. Dep't. of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), which "requires the court to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

In demonstrating that a search was adequate, the agency also "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations and quotation marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist)

were searched. . . ." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *accord Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Sec'y Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

Agency declarations are accorded "a presumption of good faith[.]" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). To rebut the presumption, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). In properly opposing a summary judgment motion, a plaintiff may not merely "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) ("In other words, 'uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.' ") (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011)) (alteration omitted).

## DISCUSSION

Plaintiff contends that summary judgment is unwarranted as to certain withheld information because it is in the public domain. Specifically, plaintiff questions defendant's

5

redaction of information from the FBI's 302 forms pertaining to individuals who had testified at his criminal trial and its withholding of 22 pages of information "concerning controlled purchases of Crack Cocaine" that allegedly was the subject of trial testimony. Pl.'s Opp'n at 4-6. In addition, plaintiff challenges defendant's justification for withholding information under exemption 7(D) based on an express assurance of confidentiality, *id.* at 10-11, and the adequacy of the FBI's search for responsive records. *Id.* at 11-13. Plaintiff has not contested, and therefore has conceded, defendant's bases for withholding all other information. The Court will first address the adequacy of the FBI's search and then the claimed exemptions.

The Adequacy of the Search

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness, *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998), mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee*, 697 F.2d at 1110. Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted). When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not search every record system." *Campbell*, 164 F.3d at 28 (citing *Oglesby*, 920 F.2d at 68).

The FBI's declarant has provided a detailed description of the FBI's Central Records System ("CRS") and explained to the Court's satisfaction why that record system is most likely to (and did) contain records responsive to plaintiff's requests. *See* Hardy Decl. ¶¶ 27-32. In responding to plaintiff's requests, the FBI searched the CRS "utilizing a six-way phonetic breakdown of [plaintiff's] names" and variations thereof. *Id*. ¶ 33. In addition, the FBI searched by plaintiff's birth date, social security number and an alias, and by the terms "Brickyard Boys," "Brickyard Block," and "BYB." *Id*. The search located a main file in the FBI's Richmond Field Office and "multiple sub-files" that included responsive information about plaintiff. *Id*. ¶ 34. Information "that did not pertain to plaintiff or his affiliation with BYB gang [was] considered 'outside the scope' of the request" and, thus, was not processed. *Id*. ¶ 35. In addition, the FBI located but did not process "responsive material" pertaining to an unsolved murder investigation by the Richmond Field Office. *Id*. ¶ 36. In response to the instant complaint, the FBI "conducted an additional search for records to identify all main files and cross-references," utilizing more search terms, but located no additional records. *Id*. ¶ 37.

Plaintiff questions why the FBI "constrain[ed] their [sic] search to Plaintiff and the BYB" when he had also requested information about deals, promises, and the like pertaining to certain "witnesses." Pl.'s Opp'n at 11-12. He argues that "[i]t would seem more probable that using a specific witness name or identifier in the CRS . . . would bear more fruit . . . ." *Id*. at 12. But, as will become apparent, such a search would have been futile because the FBI would have no obligation to disclose any responsive records absent the respective third-party's consent or proof of death.[1] The Court is satisfied that defendant conducted a reasonably adequate search for responsive records and, thus, will enter summary judgment for defendant on the search question.

---

[1] The record reveals that one of the witnesses listed in plaintiff's FOIA request, Fanny Beard, "was murdered after her cooperation in the investigation of the gang." Def.'s Reply at 10

The Claimed Exemptions

The FBI withheld information under FOIA exemptions 3, 6, 7(A), 7(C), 7(D), 7(E), and 7(F). Hardy Decl. ¶ 104. Although plaintiff has not contested all of these exemptions, the Court has considered the detailed Hardy declaration in conjunction with the Bates-numbered pages, Stephens-1 through Stephens-518 (Ex. R), and, for the sake of finality, will address the propriety of each claimed exemption.

Exemption 3

FOIA Exemption 3 covers matters that are "specifically exempted by statute . . . if that statute either (A)(i) [requires withholding] in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Any relied upon statute enacted after the OPEN FOIA Act of 2009 must "specifically cite[] to this paragraph." *Id*. § 552(b)(3)(B).

The FBI applied this exemption to withhold information pursuant to the Pen Register Act, 18 U.S.C. § 3123, which was enacted prior to 2009. *See* Hardy Decl. ¶ 46. Plaintiff has not contested defendant's application of this exemption, which the Court finds properly justified. *See id*. ¶¶ 46-47; § 3123(d) ("An [ex parte] order authorizing or approving the installation and use of a pen register or trap devise shall direct that (1) the order be sealed until otherwise ordered by the court; and (2) the person owning or leasing the line or other facility to which the pen register . . . is attached . . . not disclose the existence of the pen register . . . or the existence of the investigation . . . unless otherwise ordered by the court."); *see also Sennett v. Dep't of*

---

(referencing Opinion attached to plaintiff's opposition (Ex. 7)). A third-party's death does not extinguish personal privacy rights. *See Accuracy in Media, Inc. v. Nat'l Park Serv*., 194 F.3d 120, 123 (D.C. Cir. 1999). Regardless, defendant asserts that any records responsive to the request concerning Beard remain protected under FOIA exemption 7(A) since they pertain to an ongoing investigation of Beard's "unsolved" murder. Def.'s Reply at 10-11; *see infra* at 9-10.

*Justice*, --- F. Supp. 2d ---, 2013 WL 4517177, at *8 (D.D.C. Aug. 27, 2013) (citing cases approving withholding of pen register information under exemption 3).

Exemptions 6 and 7

Defendant withheld third-party information under FOIA exemptions 6, 7(C), 7(D), and 7(F). *See* Hardy Decl. ¶ 43. Plaintiff does not dispute that defendant properly redacted certain third-party information under "several exemptions" but contends that "these exemptions are not applicable to the FBI-302's of persons who testified against Plaintiff at his criminal trial and where their information forever remains in permanent public record." Pl.'s Opp'n at 4.

It is not disputed that the responsive information was compiled for law enforcement purposes. Hence, the Court will only address the propriety of defendant's withholding of third-party information under FOIA exemption 7, which protects from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms. *See Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution").[2]

Exemption 7(A)

As an initial matter aside from the third-party information, defendant invoked exemption 7(A) to withhold completely investigatory records pertaining to "the [unsolved] murder of a cooperating witness who obtained information during the investigation on a multiple of suspects and their potential and/or actual involvement with [the] violent street gang" that is the subject of

---

2   *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004) (the Court need not address FOIA exemption 6 separately when exemption 7(C) also applies to the same information); *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) ("deem[ing] the privacy inquiry of exemptions 6 and 7(C) to be essentially the same").

plaintiff's FOIA request. Hardy Decl. ¶ 91. Exemption 7(A) authorizes an agency to withhold law enforcement records "only to the extent that [their] production . . . could reasonably be expected to interfere with enforcement proceedings." § 552(b)(7)(A). The agency must show that release of the records reasonably could be expected to cause some distinct harm to pending or imminent enforcement proceeding or investigation. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). "Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citation omitted). "Rather, federal courts may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.' " *Id.* (quoting *Robbins Tire*, 437 U.S. at 236).

Plaintiff has not contested the application of this exemption, which the Court finds is properly justified. *See* Hardy Decl. ¶ 92 (identifying the covered records as "located in several sub-files of the main investigatory file . . . [that] will remain in a pending status until the murder investigation [by the Richmond Police Department with the FBI's assistance] is complete"); *id.* ¶¶ 93-94 (describing categories of exempt records and explaining the potential harm in their disclosure). Furthermore, for the reasons discussed next, the Court finds that defendant has properly invoked exemptions 6, 7(C), and 7(D) as alternative bases for withholding categories of investigative and administrative records pertinent to the ongoing criminal investigation. *See id.* ¶¶ 96-101.

Exemption 7(C)

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). As a direct outgrowth of this concern, Congress crafted exemption 7(C), which permits agencies to withhold from disclosure records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In assessing an agency's claim under exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure, *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006), and, as a general matter, the identification of an individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). Therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its statutory responsibilities. *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000). More recently, the D.C. Circuit has elaborated that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored. That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citations and internal quotation marks omitted). Hence, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome [e]xemption 7(C)'s protection for personal privacy under the

11

test outlined [*Favish*]." *Id*. (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

Under the *Favish* test, plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 174. For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75.

Plaintiff does not claim that an overriding public interest compels release of the information in the FBI forms. Rather, he argues that certain information is in the public domain and, thus, is no longer exempted. While it is true that the government may not rely on a FOIA exemption to withhold information that has been "officially acknowledged" or is in the "public domain," *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983), the requester has the initial burden of showing prior disclosure by "point[ing] to 'specific' [publicly disclosed] information identical to that being withheld." *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar*, 702 F.2d at 1130); *see Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (requiring disclosure only of specifically identified audio tapes introduced as evidence during a criminal trial and played in open court).

> [A]n official acknowledgment must meet three criteria: First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. . . . Third, . . . the information requested must already have been made public through an official and documented disclosure . . . . Thus, the fact that information exists in some form in the public domain

> does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption.

*Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citations omitted).

In his Affidavit and/or Declaration of Truth attached to his opposition [Dkt. # 20-1], plaintiff summarizes the alleged testimony of the witnesses about whom he has requested information and refers to portions of transcripts of testimony from his criminal trial. In his surreply, plaintiff cites to what he alleges is "the Prosecutor's opening line of questioning in respect to Troy Brockenbrough," where Brokenbrough purportedly admits to cooperating with the government about his "drug dealing activity" as part of his plea agreement. Pl.'s Surreply at 2-3. He surmises that "since we now know through the FBI, that every interview conducted by the FBI is recorded on a form known as an FD-302[,] it can be easily deduced that the testimony of Troy Brockenbrough . . . necessarily matches and/or is as specific as the information contained in the FBI's FD-302's." *Id*. at 3. Plaintiff then concludes that the "same is true for . . . the rest of the Government witnesses" who testified similarly at the criminal trial. *Id*. This speculative argument falls far short of the specificity required to succeed on a public domain theory and survive the instant summary judgment motion.

To defeat summary judgment, plaintiff must cite to particular parts of the record to show that the requested information is identical to that in the public domain. *See Wolf,* 473 F.3d at 378; Aug. 2, 2013 Order at 2 (quoting Fed. R. Civ. 56(c)). It is not the Court's role to search through a party's exhibits, even those of a *pro se* litigant, with the hope of finding the alleged matching pieces. Furthermore, "an individual does not waive privacy rights merely by testifying at trial." *Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (citation omitted). The Court finds that plaintiff has not established what, if any, withheld information responsive to his sweeping request is in the public domain to compel its release.

Exemption 7(D)

Exemption 7(D) allows agencies to withhold information in law enforcement records where the public disclosure of such information "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by the confidential source." 5 U.S.C. § 552(b)(7)(D). To properly invoke this exemption, an agency must show either that the source provided information to the agency under an express assurance of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179-81 (1993); *Campbell*, 164 F.3d at 34.

The FBI applied this exemption to the identities of individuals who supplied information under both an express and an implied grant of confidentiality. Hardy Decl. ¶¶ 68-80. The express assurances are "evidenced by the words 'PROTECT IDENTITY BY REQUEST', and 'PROTECT' when the individual's names are referenced in the file. *Id*. ¶ 80. This "probative evidence" suffices to support summary judgment as to the pages containing these explicit references. *Campbell*, 164 F.3d at 34; *see accord Hodge v. FBI* , 703 F.3d 575, 581 (D.C. Cir. 2013) (citing *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 585 (D.C. Cir. 2000)); S*choenman v. FBI*, 763 F. Supp. 2d 173, 200 (D.D.C. 2011).

"When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless 'spoke with an understanding that the communication would remain confidential.' " *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting *Landano*, 508 U.S. at 172). The relevant factors include " 'the character of the crime at issue,' 'the source's relation to the crime,' whether the source received

payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.' " *Id*. (quoting *Landano*, 508 U.S. at 179). "The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Singh v. FBI*, 574 F. Supp. 2d 32, 50 (D.D.C. 2008) (citing *Landano*, 508 U.S. at 179-80). "The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source." *Mays*, 234 F.3d at 1329.

Considering the nature of the information underlying the FOIA request and the court rulings supplied by plaintiff, it cannot be seriously disputed that the responsive information pertains to criminal investigations of "a violent street gang in the Gilpin Court Housing Project area of Richmond, Virginia." Hardy Decl. ¶ 70. The FBI invokes exemption 7(D) to protect third-party sources who "provided specific detailed information that is singular in nature concerning the investigation into a multiple of suspects, including the plaintiff, and their potential and/or actual involvement with" the gang. *Id*. ¶ 68. "Several . . . gang members were under investigation for possible links to several homicides, and many . . . were under investigation for ties to the illicit drug trade." *Id*. ¶ 70. Indeed, this FOIA record, coupled with plaintiff's conviction for conspiracy to possess with intent to distribute and to distribute cocaine base, presents the very circumstances "where the violent nature of the crime at issue -- homicide, drug trafficking, [and] gang-related crime – 'characteristically supports an inference of confidentiality' that a court can generically apply to all informants." *Rosenberg v. United States Dep't of Immig. and Customs Enforcement*, No. 12-0452, --- F. Supp. 2d ---, 2014 WL 413569, at *10 (D.D.C. Feb. 3, 2014) (quoting *Landano*, 508 U.S. at 177). And "[e]ven when the source

15

testifies in open court . . ., he does not thereby waive the [government's] right to invoke [e]xemption 7(D) to withhold . . . information furnished by a confidential source not actually revealed in public." *Davis*, 968 F. 2d at 1281 (citation and internal quotation marks omitted) (brackets in original). The Court finds that defendant properly invoked exemption 7(D) to protect confidential source information from disclosure under both express and implied grants of confidentiality.

### Exemption 7(E)

Exemption 7(E) authorizes an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). "Under [D.C. Circuit] precedents, [e]xemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.' " *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

The FBI applied this exemption to three types of "procedures and techniques" utilized by FBI agents in conducting criminal investigations. Hardy Decl. ¶ 82. The first type is described as "non-public FBI computer systems and database search procedures utilized during the investigation of plaintiff, and his affiliation with [the gang]." *Id*. ¶ 83. The release of this "internal technique" typically "[un]known to the public" could enable "individuals to take countermeasures to circumvent FBI's collection methodology and, in turn, reduce the usefulness

16

and effectiveness of the [stored] information," because disclosure "would divulge a specific law enforcement technique that could allow an individual to alter his behavior in order to avoid detection . . . ." *Id*.

The second type covers "the operational details and evidence collection procedures during controlled substance buys." *Id*. ¶ 84. Disclosure "could enable criminals [or targets] to educate themselves about the . . . investigative techniques and procedures" and "take countermeasures to circumvent [their] effectiveness" *Id*.

The third type covers surveillance and arrests, particularly "the locations, investigative assistance, monitoring techniques, types of devices utilized . . ., command and control, and . . . joint law enforcement arrest coordination plans conducted by the FBI and its law enforcement partners." *Id*. ¶ 85. Although the public is generally aware "that the FBI and other law enforcement agencies engage in different types of surveillance," the declarant states that disclosure of the details described here could reasonably be expected to enable the targets of investigations to circumvent the law by "develop[ing] and utiliz[ing] countermeasures to defeat or avoid different types of surveillances, or avoid arrests . . . ." *Id*. ¶ 86.

Plaintiff has not contested this claimed exemption, and the Court finds that it was properly invoked.

Exemption 7(F)

Exemption 7(F) protects from disclosure law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "Within limits, the Court defers to the agency's assessment of danger." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 101 (D.D.C. 2009). The FBI applied this exemption to the identifying information of third-party individuals who provided "valuable intelligence during the

[subject] investigation." Hardy Decl. ¶¶ 43, 88. The declarant states that "[t]he fear of harm that these individuals are facing is evident by [their] statements made . . . during their interviews" with law enforcement personnel. *Id.* ¶ 89. The Court finds the FBI's invocation of this exemption, which is consistent with the already approved basis for withholding information under exemption 7(D), properly justified.

Record Segregability

The Court is required to make a finding as to whether defendant has shown that it released all reasonably segregable non-exempt information. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (placing an "affirmative duty" on the district court to address record segregability). " 'The question of segregability is subjective based on the nature of the document in question, and an agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable.' " *Rosenberg v. U.S. Dep't of Immig. and Customs Enforcement*, 959 F. Supp. 2d 61, 73 (D.D.C. 2013) (quoting *Cater, Fullerton & Hayes LLC v. Fed. Trade Comm'n*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007)) (other citation omitted).

The FBI's declarant states that "each document[] was individually reviewed for segregability" and that "all segregable information was released to plaintiff." Hardy Decl. ¶ 102. The declarant further dissects the pages that were withheld in full or in part after a "line by line" review of each page for the specific purpose of determining its segregability. *Id.* ¶ 103. The Court is satisfied from its own examination of the Bates-numbered redacted pages and deleted page sheets that such a review occurred and that all reasonably segregable information was disclosed.

**CONCLUSION**

For the foregoing reasons, the Court finds no genuinely disputed material fact with regard to the FBI's satisfaction of its disclosure obligations under the FOIA and concludes that defendant is entitled to judgment as a matter of law. A separate Order accompanies this Memorandum Opinion.

_____s/s_____
COLLEEN KOLLAR-KOTELLY
DATE:   March 18, 2014                          United States District Judge